**Vito VALENTINO, Plaintiff-Appellee,**

v.

**RICKNERS RHEDEREI, G.M.B.H., SS ETHA, Defendant,**

and

**John W. McGrath Corporation, Intervenor-Appellant.**

**No. 443, Docket 76–7367.**

United States Court of Appeals, Second Circuit.

Argued Feb. 9, 1977.

Decided March 17, 1977.

---

**14.** Deposition of March 22, 1973, *Ray v. Rockefeller*, No. 71–CV–488 (N.D.N.Y.).

James M. Leonard, New York City (Martin J. McHugh, James M. Kenny, McHugh, Heckman, Smith & Leonard, New York City, of counsel), for intervenor-appellant.

Irving B. Bushlow, Brooklyn, N. Y., for plaintiff-appellee.

Before FEINBERG, GURFEIN and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

In 1972, Congress enacted a sweeping revision of the laws governing the work-related injuries of longshoremen in the amendments to the Longshoremen's and Harbor Workers' Compensation Act, 86 Stat. 1251 et seq., amending 33 U.S.C. §§ 901 et seq. ("the Act"). On this appeal, we are asked to determine if the Act sub silentio overruled a line of district court cases which relied on Fontana v. Pennsylvania R. R., 106 F.Supp. 461 (S.D.N.Y.1952), aff'd sub nom. Fontana v. Grace Line, Inc., 205 F.2d 151 (2d Cir.), cert. denied, 346 U.S. 886, 74 S.Ct. 137, 98 L.Ed. 390 (1953). Those cases held that a stevedore's compensation lien [1] on a longshoreman's tort recovery had priority over the attorney's lien for his fee. In the district court, Judge Weinstein held that the rule had in fact been changed, and awarded an attorney's fee. We affirm.

The appellee is a longshoreman employed by the John W. McGrath Corporation ("McGrath"), a stevedoring company. In November, 1974, he was injured while unloading the SS ETHA. As a result of his injuries, he was paid compensation and medical expenses of $15,488.31. McGrath asserts a lien in this amount against any tort recovery obtained by Valentino. 33 U.S.C. § 933.

Pursuant to 33 U.S.C. § 933(a), Valentino brought a suit in the Eastern District of New York against the SS ETHA and its owners, alleging that their negligence was the proximate cause of his injuries. The case was tried to a jury, before Judge Weinstein, and resulted in a verdict of $5,000. Valentino's attorney represented him on a contingent fee basis; the retainer called for a fee of $2,000 in this case. The attorney claims that he is entitled to recover his fee from the $5,000 fund before McGrath claims the remainder pursuant to

---

1. The injured longshoreman is paid workmen's compensation and medical expenses during his disability. In addition, he may maintain an action against the ship on which he was injured. The stevedore, or its insurance carrier, has a lien against any such recovery for the amount of the compensation.

its lien.[2] Judge Weinstein agreed. In order to explain our holding affirming the district court, it is necessary to briefly outline the situation prior to the 1972 amendments to the Act.

In *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), the Supreme Court decided that a longshoreman covered by the Act could also recover full damages from the ship on which he was injured, based on a non-negligent breach of its warranty of seaworthiness. A decade later, the Supreme Court held that there was a warranty of workmanlike performance running from the stevedore to the shipowner. *Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). A breach of this warranty occurred if the unseaworthiness was solely the fault of the shipowner but was "brought into play" by the stevedore, or even if it arose largely from the negligence of the injured longshoreman. *See McLaughlin v. Trelleborgs Angfartygs A/B*, 408 F.2d 1334 (2d Cir.) (Friendly, J.), *cert. denied*, 395 U.S. 946, 89 S.Ct. 2020, 23 L.Ed.2d 464 (1969); G. Gilmore and C. Black, The Law of Admiralty, 442–448 (2d ed. 1975). The shipowner was allowed to implead the stevedore for breach of the *Ryan* warranty. The net result in most cases was that the stevedore became liable without fault for injuries to its employees. However, in order to prevent a double recovery, the stevedore had a lien against the tort recovery for the amount expended in compensation and medical costs.

Widespread dissatisfaction with these doctrines led Congress to a restructuring of the compensation system in 1972. The right to sue for a breach of warranty of seaworthiness was abolished. The right of the shipowner to seek indemnity from the stevedore, based upon the warranty of workmanlike performance, was similarly done away with. In return, the level of compensation benefits was substantially raised.

The injured longshoreman is still able to sue the ship for negligence, and recover an amount beyond the statutorily fixed compensation. If, after six months, he has not done so, the stevedore may sue in the longshoreman's name. When it does, the stevedore is first paid back for the amount of compensation, plus its costs and an attorney's fee. Any excess is distributed 20 percent to the stevedore and 80 percent to the longshoreman. 33 U.S.C. § 933(e)(2).[3]

■ The statute is silent on the distribution of the recovery in a suit brought by a longshoreman himself. We are thus required to formulate a rule that complements the statutory scheme. *See Cella v. Partenreederei MS Ravenna*, 529 F.2d 15, 20 (1st Cir. 1975), *cert. denied*, 425 U.S. 975, 96 S.Ct. 2175, 48 L.Ed.2d 799 (1976).

■ It is a well-established principle of equity that a lawyer who creates a fund for the benefit of another is entitled to reason-

---

2. Regardless of our decision, the longshoreman will receive nothing.

3. 33 U.S.C. § 933(e) provides:

(e) Any amount recovered by such employer on account of such assignment, whether or not as the result of a compromise, shall be distributed as follows:

(1) The employer shall retain an amount equal to—

(A) the expenses incurred by him in respect to such proceedings or compromise (including a reasonable attorney's fee as determined by the deputy commissioner or Board);

(B) the cost of all benefits actually furnished by him to the employee under section 907 of this title;

(C) all amounts paid as compensation;

(D) the present value of all amounts thereafter payable as compensation, such present value to be computed in accordance with a schedule prepared by the Secretary, and the present value of the cost of all benefits thereafter to be furnished under section 907 of this title, to be estimated by the deputy commissioner, and the amounts so computed and estimated to be retained by the employer as a trust fund to pay such compensation and the cost of such benefits as they become due, and to pay any sum finally remaining in excess thereof to the person entitled to compensation or to the representative; and

(2) The employer shall pay any excess to the person entitled to compensation or to the representative, less one-fifth of such excess which shall belong to the employer.

able compensation for his efforts. *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939); *Chouest v. A & P Boat Rentals, Inc.*, 472 F.2d 1026 (5th Cir.) (Wisdom, J.), *cert. denied*, 412 U.S. 949, 93 S.Ct. 3012, 37 L.Ed.2d 1002 (1973). McGrath contends, however, that this rule is inapplicable in the instant case. Its argument is that because Valentino's lawyer has conferred no benefit upon his client, the longshoreman, he is not entitled to any fee for his efforts. Such a holding here would exalt form over substance.

If the stevedore had brought this suit, and recovered $5,000, it would have retained the entire amount only in a technical sense. Attorneys for stevedores, no less than those who represent longshoremen, generally expect to be paid for their services. Out of its $5,000 judgment, the stevedore would have to pay the cost of recovering it. If it refused to do so, its attorney would have a lien against the fund. N.Y. Jud.L. § 475 (McKinney 1968).

Thus, a stevedore seeking to enforce its employee's rights would be chargeable with reasonable attorney's fees regardless of the size of the recovery. Here, during the six-month waiting period, Valentino pursued his remedies with his own attorney. Because the recovery was insufficient to cover McGrath's lien plus the legal fees, McGrath asserts that it is entitled to the entire fund recovered. If, in the instant case, McGrath had brought suit and recovered the $5,000, it would have had to pay its legal expenses after applying its lien to the fund. There is little justification for putting a stevedore in a stronger position when the longshoreman pursues his own statutory remedy than when the stevedore does so for him.

McGrath responds that for six months after the injury, the longshoreman alone has the statutory right to sue, and the employer can do nothing. 33 U.S.C. § 933(b). It argues that it could bring suit with less expensive counsel, and might pursue a different trial strategy. Neither ground supports reversal.

The stevedore should not realize a windfall simply because its employee has chosen to exercise a right granted by Congress. In the six-month provision of 33 U.S.C. § 933(b), Congress has made a deliberate choice to allow the longshoreman alone to proceed with the suit. Thus, control of the lawsuit and choice of counsel are given to him for six months. The fact that he has taken up this option gives no additional rights to the employer. Moreover, if Valentino's action here did create any rights for McGrath, it would be the right to question the amount of the fee, and not to question the payment of a fee at all. Here, it is conceded that the amount of the fee is reasonable.

At oral argument, both parties stated that stevedores do not, as a practical matter, pursue these lawsuits—presumably for fear of antagonizing their customers. To deny attorneys a fee in these circumstances would surely discourage counsel from pressing longshoremen's claims on a contingent fee basis in all cases, save those where a recovery substantially in excess of the amount of the stevedore's lien is a virtual certainty. Thus, appellant asks us to sacrifice the actual rights of longshoremen and their lawyers to the theoretical possibility that they might elect to press such claims at some time in the future. We refuse to do this.

The appellant relies heavily upon our summary affirmance of Judge Weinfeld's opinion in *Fontana v. Pennsylvania R. R.*, *supra*. In *Fontana*, the longshoreman recovered $4,000 in court after receiving approximately $1,700 in compensation.[4] After satisfaction of the compensation lien and payment of an attorney's fee, there was little or nothing left for the longshoreman. Judge Weinfeld ruled that the distribution of the proceeds would be the same as if the stevedore had sued:

> *Thus, the Act treats the recovery as a fund charged first with the expense of the litigation and then with the amounts paid for compensation and medical expenses* and the employee becomes entitled

---

4. The opinion in *Fontana* does not actually indicate what became of the $2,300 excess.

only to any excess finally remaining. There is no reason why a recovery obtained against the third party by the employee rather than the employer should be distributed differently. *The expense of securing the recovery is, as in equity it should be, a first charge against the fund itself.* As such it is immaterial whether the fund was created in a suit brought by the employer or one brought by the employee. Huron, the employer, is therefore entitled to receive out of the $4,000 settlement, its compensation and medical expense payments, without deduction for attorneys' fees or other litigation costs. 106 F.Supp. at 463–64. (emphasis supplied). Thus, a close reading of *Fontana* does not suggest a reversal here. *Fontana* acknowledged that the attorney who secured the recovery was entitled to a fee. That decision merely determined that the longshoreman, and not the stevedore, was responsible for its payment out of his share of the recovery. The holding was grounded in the statutory language. It simply does not address the situation we have here, where the longshoreman does not share in the recovery and only the stevedore can pay. This is the reading given *Fontana* by Judge Wisdom in *Chouest v. A & P Boat Rentals, Inc., supra,* 472 F.2d at 1034 n. 13. *See also Cella v. Partenreederei MS Ravenna, supra,* 529 F.2d at 17 n. 1; *Lamar v. Admiral Shipping Corp.,* 476 F.2d 300, 302–03 (5th Cir. 1973).

Following *Fontana,* but before Congress restructured the compensation system, a few cases arose in this Circuit in which the recovery was less than the compensation lien, and no attorney's fee was allowed. *Spano v. N. V. Stoomvaart Maatschappij "Nederland",* 340 F.Supp. 1194 (S.D.N.Y. 1971); *Russo v. Flota Mercante Grancolombiana,* 303 F.Supp. 1404 (S.D.N.Y.1969). In the meantime, after the decision in *Fontana,* the Supreme Court had created the shipowner's *Ryan* right of indemnity against the stevedore. Thus, to impose a fee in such a case was to charge the stevedore for the privilege of being sued. This conflict of interest was the explicit rationale for Judge Mansfield's opinion in *Russo v. Flota Mercante Grancolombiana, supra,* 303 F.Supp. at 1407. It was also the explicit basis for the holding of the Fourth Circuit that no fee could be collected in such a situation. *Ballwanz v. Jarka Corp,* 382 F.2d 433 (4th Cir. 1967).

With the abolition of the "warranty of workmanlike performance" and its accompanying right to indemnity, this conflict of interest was eliminated. The Fourth Circuit, in response to this, held that *Ballwanz* was no longer applicable. *Swift v. Bolten,* 517 F.2d 368, 369–70 (4th Cir. 1975). The same rationale requires us to disapprove such cases as *Russo* and *Spano,* and reach the same conclusion as the Fourth Circuit. In doing so, we do not disturb *Fontana's* holding on the allocation of the attorney's fee from the award.

■ There is thus no reason to deny an attorney's fee in this case. The equitable rule of *Sprague v. Ticonic Nat'l Bank, supra,* requires it. Charging the fund with the expense of recovering it is in keeping with the statutory scheme. Finally, with the abolition of the *Ryan* action in 1972, there is no longer a conflict of interest between stevedore and longshoreman calling for a contrary result. The judgment of the district court is affirmed.[5]

---

**5.** Judge Weinstein held, on ethical grounds, that the fee could not be shared with the longshoreman. *Compare Scozzari v. Jade Co.,* 350 F.Supp. 801, 805–806 (E.D.N.Y.1972). If such fee-splitting were allowed, it would open the way for an end-run around the rule that the stevedore must be paid in full before the longshoreman receives anything. We affirm this part of his holding as well.